# United States Court of Appeals
# for the Federal Circuit

_____

**WILLIAM OLAS BEE,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

_____

2024-2306

_____

Appeal from the United States Court of Federal Claims in No. 1:21-cv-01970-PSH, Judge Philip S. Hadji.

_____

Decided:  July 16, 2026

_____

MICHAEL CLEMENTE, Latham & Watkins LLP, Washington, DC, argued for plaintiff-appellant.  Also represented by KYLE R. JEFCOAT; ASHLEY K. GEBICKE, DARRYL HUGH STEENSMA, San Diego, CA; ROCHELLE BOBROFF, ESTHERN LEIBFARTH, National Veterans Legal Services Program, Arlington, VA.

STEVEN JOHN GILLINGHAM, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee.  Also represented by PATRICIA M. MCCARTHY, DOUGLAS K. MICKLE, BRETT SHUMATE.

_____

Before REYNA, CLEVENGER, and CHEN, *Circuit Judges*.

REYNA, *Circuit Judge*.

William Olas Bee appeals from a final decision of the United States Court of Federal Claims, which sustained the Board for Correction of Naval Records' denial of Mr. Bee's petition for correction of his military record to reflect a medical disability retirement. We hold that the Board applied the wrong legal standard for assessing fitness and failed to apply liberal consideration to Mr. Bee's evidence of his unfitness for duty. We thus vacate the Federal Claims Court's decision and remand to the Board for further proceedings.

## BACKGROUND

In 1999, appellant William Olas Bee enlisted in the U.S. Marine Corps ("Marine Corps" or "agency"). J.A. 4052; J.A. 4940. Mr. Bee served his nation honorably until his voluntary discharge from the Marine Corps on April 1, 2013. J.A. 4940. During his service, Mr. Bee's initial "primary military occupation specialty" ("PMOS") was an "Infantry Rifleman." J.A. 4052. A PMOS, also called a "rate," identifies the marine's primary skills within the Marine Corps' career-designation system, the "Military Occupational Specialty," ("MOS"). *Id.*

Mr. Bee deployed to Afghanistan four times during his service. During his third deployment, Mr. Bee suffered a major head injury. J.A. 4069; J.A. 4185. Following this deployment, he was diagnosed with a "[p]otential [traumatic brain injury] with persistent symptoms." J.A. 4081. During his fourth and final deployment from December 2009–June 2010, Mr. Bee was wounded by explosions of multiple improvised explosive devices, which killed two fellow marines. J.A. 1011–1012. After this deployment, in 2010, Mr. Bee was diagnosed with a traumatic brain injury

("TBI") and post-traumatic stress disorder ("PTSD"). J.A. 4180.

In June 2010, Mr. Bee returned to the United States from Afghanistan and was placed on limited duty effective June 21, 2010. J.A. 4003. Around September 2010, Mr. Bee was removed from limited duty and subsequently promoted from sergeant to staff sergeant, with his PMOS of Infantry Rifleman changing to "Infantry Unit Leader." J.A. 4887; J.A. 1562.

In November 2010, following his promotion, Mr. Bee was transferred to the Marine Corps Field Medical Training Battalion-East, where, until his separation from service, he served as an instructor for Navy chaplains and medics.

In October 2012, Mr. Bee requested to separate early from the Marine Corps through the Voluntary Separation Program ("VSP"). J.A. 4399.

On April 1, 2013, Mr. Bee was discharged pursuant to his VSP request. J.A. 4330. On Mr. Bee's discharge certification, formally referred to as a "DD Form 214," his discharge was noted as April 1, 2013. J.A. 1595. In block 28 of this form, titled "Narrative Reason for Separation," the Navy noted "FORCE SHAPING-VSP," referring to the VSP Mr. Bee entered into and which resulted in his voluntary discharge. *Id.* Notably, prior to discharge, Mr. Bee was never afforded review by a medical review board to determine whether Mr. Bee's PTSD and TBI rendered him unfit for duty and entitled to a medical disability retirement.

In April 2013, after his discharge, Mr. Bee applied for disability benefits from the U.S. Department of Veterans Affairs ("VA"). On October 10, 2013, the VA issued a letter of its proposed VA Rating Decision, noting that Mr. Bee had a TBI and PTSD, that his injuries were "service connect[ed]," and that each condition was rated at 70 percent disability. J.A. 5011. He was rated for other conditions

and received an overall disability rating of 100 percent. *See* J.A. 1564.

In April 2018, Mr. Bee submitted an application to the Board for Correction of Naval Records ("BCNR") requesting a change in the narrative reason for separation noted on his April 1, 2013 DD Form 214 from Force-Shaping VSP to medical disability retirement for his PTSD and TBI. J.A. 4013; J.A. 4031. Mr. Bee submitted a brief in support of his application, arguing that "he should have qualified for disability retirement at the time of his discharge on April 1, 2013," due to his PTSD and TBI, that were more than 30 percent disabling. J.A. 4049.

In 2019, the BCNR denied Mr. Bee's petition in a short three-page opinion, concluding that the evidence showed that Mr. Bee was fit for service at the time of discharge and thus not entitled to a medical disability retirement. J.A. 4003–4005 ("2019 Decision").

On October 6, 2021, Mr. Bee filed a complaint before the U.S. Court of Federal Claims ("Federal Claims Court"), seeking an award of disability retirement pay and challenging the BCNR 2019 Decision. The challenge resulted in a voluntary remand so that the BCNR could reconsider its decision.

On remand, in a more fulsome decision, the BCNR again denied Mr. Bee's petition. J.A. 4245–4263 ("2023 Decision"). The BCNR concluded that the preponderance of the evidence showed that at the time of his discharge, Mr. Bee was fit for duty and thus was not entitled to a medical disability retirement. *See* J.A. 4248; J.A. 4263. The BCNR did not explicitly state in its decision whether it was affording "liberal consideration," a principle at issue in this appeal, to Mr. Bee's petition.

Mr. Bee then amended his complaint to challenge the BCNR 2023 Decision. J.A. 1. Mr. Bee argued that the BCNR erred in two respects: that it (1) failed to apply the

correct legal standard for assessing Mr. Bee's fitness for duty, and (2) failed to afford liberal consideration to Mr. Bee's petition, which Mr. Bee argued was required under 10 U.S.C. § 1552(h) and binding military policy. J.A. 10–19. The government defended the BCNR's determination and also argued that Mr. Bee's complaint before the Federal Claims Court was time-barred under 28 U.S.C. § 2501. *Id.*; J.A. 5.

The Federal Claims Court determined that Mr. Bee's complaint was timely, denying the government's motion to dismiss for lack of subject matter jurisdiction. J.A. 1. The Federal Claims Court, however, determined that Mr. Bee's complaint failed on the merits and thus granted the government's motion for judgment on the administrative record and denied Mr. Bee's motion for judgment on the administrative record. *Id.*

Mr. Bee appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review a decision of the Federal Claims Court "granting or denying a motion for judgment on the administrative record without deference." *Bader v. United States*, 97 F.4th 904, 909 (Fed. Cir. 2024) (internal citation omitted). Applying the same standard of review as the Federal Claims Court, "we will not disturb the decision of the [Board] unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Id.* (internal citation omitted). We review the Federal Claims Court's decision to deny a motion to dismiss de novo. *Banks v. United States*, 314 F.3d 1304, 1307–08 (Fed. Cir. 2003).

### I. TIMELINESS OF COMPLAINT

As a threshold issue, the government argues that Mr. Bee's complaint filed at the Federal Claims Court was time-barred under the six-year statute of limitations expressed at 28 U.S.C. § 2501. Appellee Br. 20–24. For the

following reasons, we disagree with the government and affirm the lower court's decision to deny the government's motion to dismiss Mr. Bee's complaint for lack of subject matter jurisdiction.

Section 2501 provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. A claim accrues "as soon as all events have occurred that are necessary to enable the plaintiff to bring suit." *Chambers v. United States*, 417 F.3d 1218, 1224 (Fed. Cir. 2005).

Generally, a claim for entitlement to medical disability retirement pay does not accrue until the appropriate medical review board either finally denies such claim or refuses to hear it. *Friedman v. United States*, 310 F.2d 381, 395–96 (Ct. Cl. 1962). Thus, if, at the time discharge, the servicemember's request for a medical review board was refused or if the medical review board heard the claim for medical disability retirement pay and denied it, the claim accrued at discharge. *See id.* at 390. However, when a servicemember does not receive review by a medical review board or did not request such review prior to discharge, and rather presented a claim for medical disability retirement pay in the first instance to a military corrections board post-discharge, the "claim does not accrue until final action by the Correction Board (which in that instance stands in the place of the [appropriate medical review board] as the proper tribunal to determine eligibility for disability retirement)." *Id.* at 395–96.

Here, Mr. Bee argues that because he did not request or receive review by a medical review board prior to discharge, his claim did not accrue until the BCNR 2019 Decision. Reply Br. 24–29. This means his 2021 complaint was timely, having been filed at the Federal Claims Court within six years of the 2019 Decision. The government, however, argues that under the "*Real* exception," Mr. Bee's

claim accrued at the time of his April 1, 2013 discharge and not the BCNR 2019 Decision. Appellee Br. 20–24. The government thus argues that Mr. Bee's 2021 complaint is time-barred as having been filed six years after April 1, 2013. *Id.*

The "*Real* exception" provides that "there are circumstances under which the service member's failure to request a hearing board prior to discharge has been held to have the same effect as a refusal by the service to provide board review." *Real v. United States*, 906 F.2d 1557, 1560 (Fed. Cir. 1990) (citation omitted). Under these "circumstances," the claim for medical disability retirement accrues at discharge and not at the time of the decision by a military corrections board. *See id.* These "circumstances" are limited to a scenario where the servicemember had "either actual or constructive knowledge that he was entitled to disability benefits" prior to discharge such that his failure to request review by a medical review board "justif[ies] concluding that he waived the right to board review." *Id.* at 1562–63; *see also Chambers*, 417 F.3d at 1223–27. This includes a requirement that the servicemember knew or should have known at the time of discharge that he was "suffering from a permanently disabling disorder." *Real*, 906 F.2d at 1563; *see also Reaves v. United States*, No. 21-2306, 2022 WL 412740, at *3 (Fed. Cir. Feb. 10, 2022). Thus, the *Real* exception is not triggered if the servicemember simply "learn[ed] of his disabling condition" pre-discharge but rather when the servicemember "knew that [at the time of discharge] he was entitled to disability retirement due to a *permanent disability.*" *Chambers*, 417 F.3d at 1226 (emphasis added). For example, in *Chambers*, we held that the *Real* exception did not apply because the evidence pre-discharge did not show such knowledge but rather indicated knowledge that the servicemember's condition was "minor, temporary and circumstantial." *Id.* at 1226–27.

When the Federal Claims Court looks beyond the complaint in determining whether a servicemember had sufficient knowledge of a permanent disability for purposes of claim accrual, the Federal Claims Court's finding of knowledge, or lack thereof, is a question of fact which we review for clear error. *See Real*, 906 F.2d at 1563 (remanding the question of knowledge to the Federal Claims Court to find in the first instance); *see also Banks*, 314 F.3d at 1307–08 ("[T]his court reviews the Court of Federal Claims' . . . jurisdictional findings of fact . . . for clear error."); *Reaves,* 2022 WL 412740, at \*3. If, however, the Federal Claims Court bases its determination of the servicemember's knowledge solely on allegations in the complaint, "[w]e review the [Federal Claims Court's] dismissal de novo, taking as true all undisputed facts asserted in the complaint and drawing all reasonable inferences in favor of the plaintiff." *Reaves*, 2022 WL 412740, at \*2.

Here, the Federal Claims Court found that Mr. Bee did not have sufficient knowledge pre-discharge that his PTSD or TBI were permanent disabilities, relying on evidence outside of the complaint, namely the VA's October 2013 Rating Decision and Mr. Bee's medical evaluations pre-discharge. J.A. 6. We see no error with this finding of fact. The two types of evidence relied on by the Federal Claims Court support its finding of insufficient knowledge of permanent disabilities pre-discharge. The VA's October 2013 Rating Decision notified Mr. Bee *post-discharge* that his disabilities, combined, were 100 percent disabling. As such, as the Federal Claims Court found, Mr. Bee "likely did not understand the 'full extent' of his TBI and PTSD," until he received the VA's October 2013 Rating Decision post-discharge. *Id.* As to the medical evaluations, which were issued pre-discharge, they "repeatedly" gave Mr. Bee a rating of "fit for duty." *Id.* As such, as the Federal Claims Court correctly reasoned, these "positive evaluations" led Mr. Bee "to believe that his disabilities were of a less serious nature and that he was not entitled to disability

retirement." J.A. 6–7 (internal quotations omitted). Based on this evidence, the Federal Claims Court's finding that Mr. Bee lacked sufficient knowledge of permanent disabilities prior to his discharge is not clearly erroneous.

The government argues that the Federal Claims Court's reliance on the VA's October 2013 Rating Decision was misplaced, citing to *Jones v. United States* for the proposition that under *Real*, a claimant need not "know the numerical score of his disability or that he has a winning case," so long as the servicemember has sufficient knowledge of the disability. Appellee Br. 23–24 (citing 30 F.4th 1094, 1103 (Fed. Cir. 2022)). We reject the government's argument. While *Real* does not explicitly require knowledge of a servicemember's VA disability rating in order to show sufficient knowledge of a permanent disability, that is not to say that such evidence could never be relevant to the knowledge inquiry. As *Real* explains, the knowledge inquiry is fact dependent and turns on the "circumstances" of that case. *Real*, 906 F.2d at 1560–63. Additionally, contrary to the government's position, *Jones* does not render a VA's disability rating decision irrelevant to the *Real* analysis. 30 F.4th at 1103. There, we rejected such evidence because unlike here, the servicemember had already received a decision by a medical review board prior to discharge. *Id.* Thus, we determined that "all events necessary to fix the government's alleged liability occurred, entitling Mr. Jones to bring suit and demand payment" at discharge. *Id.* Unlike in *Jones,* Mr. Bee never received review by a medical review board and thus, whether Mr. Bee had sufficient knowledge of the permanency of his disabilities pre-discharge is at issue. Under these circumstances, coupled with the fact that Mr. Bee repeatedly received positive medical evaluations from the military pre-discharge, we see no error in the Federal Claims Court's reliance on the VA's October 2013 Rating Decision. *See Real*, 906 F.2d at 1560–63.

In sum, we conclude that the *Real* exception does not apply because the Federal Claims Court's finding that Mr. Bee had insufficient knowledge of the permanency of his disabilities is not clearly erroneous. Without the application of the *Real* exception, Mr. Bee's complaint before the Federal Claims Court is timely.

## II. Fitness Determination

Mr. Bee argues on appeal that the BCNR legally erred in two independent respects when conducting its fitness determination. We address each alleged error in turn.

### A. § 3301

Mr. Bee first argues that the BCNR legally erred under SECNAVINST 1850.4E, § 3301 when it failed to relate his disabilities of PTSD and TBI to the duties of his "office, grade, rank, or rating." Appellant Br. 43. Specifically, Mr. Bee argues the BCNR never conducted this analysis in its 2023 Decision because it never explicitly or implicitly considered the duties of Mr. Bee's rating as an Infantry Unit Leader. *Id.* Rather, according to Mr. Bee, the BCNR bypassed this inquiry and instead relied on Mr. Bee's performance reports in his assignment as an instructor for Navy chaplains and medics. *Id.* at 46–47. Based on these performance reports, Mr. Bee argues that the BCNR concluded that he was fit to perform the duties of his office, grade, rank, and rating without first establishing that his instructor's duties are the same as those expected of an Infantry Unit Leader. *Id.* at 47. We conclude that the BCNR legally erred under § 3301.

By statute, when a "member of a regular component of the armed forces entitled to basic pay" is determined by the military to be "unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay . . . , the Secretary may retire the member, with retired pay . . . ." 10 U.S.C.

§§ 1201(a), (c). This inquiry is colloquially referred to by the parties as a "fitness determination."

The Navy implemented this statutory mandate in the Secretary of the Navy Instruction ("SECNAVINST"), which is binding Navy policy. Relevant here, SECNAVINST 1850.4E, § 3301, titled "Standard Used for Disability Determination," provides that "[t]*he sole standard* to be used in making determinations of physical disability as a basis for retirement or separation is unfitness to perform the duties of office, grade, rank *or* rating because of disease or injury incurred or aggravated while entitled to basic pay." SECNAVINST 1850.4E, § 3301 (emphases added). Thus, if a servicemember is unable to perform the duties of either his office, grade, rank, or rating, he may be found to be unfit for purposes of § 3301. *Id.* Here, the issue is whether Mr. Bee could perform the duties of his rating as an "Infantry Unit Leader," his rating at the time of his discharge.

Section 3301 also provides that "[e]ach case *is considered* by relating the nature and degree of physical disability of the member to the requirements and duties that member may reasonably be expected to perform in his or her office, grade, rank or rating." *Id.* (emphasis added). Thus, the deciding body, i.e., the medical review board pre-discharge or the BCNR post-discharge, is required to "consider[]" a servicemember's fitness for duty by "relating the nature and degree of physical disability of the member to the requirements and duties that member may reasonably be expected to perform in his or her office, grade, rank or rating." *Id.*[1] Notably, § 3301 does not impose any specific format or

---

[1]    In its 2023 Decision, the BCNR noted that it does not conduct fitness determinations. *See* J.A. 4247. This is incorrect. As the Federal Claims Court noted below and the government clarified at oral argument in this appeal, the BCNR conducts fitness determinations. *See* J.A. 14; *see also* Oral Arg. 1:25:32–1:25:44; 1:28:24–1:28:32.

procedure for considering the servicemember's duties. Thus, the deciding body has flexibility with this analysis and need not provide an exhaustive list of each duty expected of the servicemember. But at a minimum, such consideration should contain a clear statement from the deciding body of the duties a servicemember may "*reasonably be expected to perform*" of their "office, grade, rank, or rating." *Id.* (emphasis added). Thus, so long as the duties identified are representative of those "reasonably . . . expected" of the servicemember, the deciding body has satisfied § 3301.

Here, the BCNR ran afoul of § 3301 by failing to explicitly or implicitly identify any duties "reasonably . . . expected" of an Infantry Unit Leader in its 2023 Decision. *See* J.A. 4245–4263. By failing to identify these duties, the BCNR could not relate such duties with Mr. Bee's disabilities as required under § 3301.

Compounding this legal error was the BCNR's mistaken belief that it had no obligation to identify these duties. In its 2023 Decision, the BCNR conceded that it "failed to make explicit findings" as to the duties of Mr. Bee's "office, grade, rank, or rating" in its earlier 2019 Decision. J.A. 4248. The BCNR, however, noted that it need not do so in its 2023 Decision because "[t]he burden was on [Mr. Bee] to prove [he] w[as] reasonably unable to perform the duties of [his] office, grade, rank, or rating . . . , and not upon the Board to prove that [he] w[as] capable of performing those duties." *Id.* The BCNR's reasoning is legally erroneous. Mr. Bee's burden to show he was unfit for duty in order to receive relief from the BCNR does not relieve the BCNR of properly applying the legal standard for fitness determinations under § 3301, which requires consideration of the "duties that member may reasonably be expected to perform in his or her office, grade, rank or rating." SECNAVINST 1850.4E, § 3301. As previously noted, this requirement, at a minimum, requires a clear statement

from the BCNR of the duties "reasonably . . . expected" of an Infantry Unit Leader. *Id.*

The government, however, argues that the BCNR sufficiently complied with § 3301 in the 2023 Decision when, towards the end of this decision, the BCNR noted the duties of Mr. Bee's position as an instructor of Navy chaplains and medics and concluded that those duties were substantially similar to an "Infantry Unit Leader assigned to an operational Marine combat unit in a garrison environment." Appellee Br. 31–32 (quoting J.A. 4259). This statement, however, is legally insufficient under § 3301. Per the plain language of § 3301, the inquiry focuses on a comparison of a servicemember's disabilities to his duties of his "rating," not a comparison only in the context of a single limited environment, such as an Infantry Unit Leader in a "garrison environment." SECNAVINST 1850.4E, § 3301.

To conclude, we hold that the BCNR legally erred under § 3301 when it failed to explicitly or implicitly identify the duties "reasonably . . . expected" of Mr. Bee's rating as an Infantry Unit Leader. On remand, the BCNR must provide a clear statement of the duties "reasonably . . . expected" of an Infantry Unit Leader based on the record before it.[2]

## B. § 3304

Mr. Bee also argues that the BCNR separately erred under SECNAVINST 1850.4E, § 3304 when it failed to conduct the proper analysis for considering whether Mr. Bee could reasonably perform his duties as an Infantry Unit

---

[2]    Mr. Bee argues that the duties "reasonably . . . expected" of an Infantry Unit Leader (1) are described in the Marine Corps Infantry Training and Readiness Manual and (2) include combat. Appellant Br. 45–46. Whether these two points are true is for the BCNR to decide in the first instance on remand.

Leader. Appellant Br. 44–45. Specifically, Mr. Bee argues that the BCNR failed to address two of four required factors under § 3304: common military tasks and deployability. *Id.* We agree.

Section 3304 is titled "Reasonable Performance of Duties" and provides that when the deciding body is "[d]etermining whether a member can reasonably perform his or her duties," the determination "includes consideration of" four factors: the servicemember's (1) "Common Military Tasks," of his "office, grade, rank, or rating," (2) "Physical Readiness/Fitness Tests," (3) "Deployability," and (4) "Special Qualifications." SECNAVINST 1850.4E, § 3304. In other words, the deciding body must consider these four factors. *Id.*

Here, the BCNR failed to consider whether Mr. Bee's disabilities affected his performance of common military tasks of an Infantry Unit Leader. As previously discussed, the BCNR failed to identify the duties of an Infantry Unit Leader and instead focused on the duties of Mr. Bee's position as an instructor for Navy chaplains and medics. Similar to our analysis under § 3301, the BCNR's focus on a subset of duties, without any finding that these duties are the equivalent of the duties reasonably expected of an Infantry Unit Leader, is legally erroneous under § 3304. *See Kelly v. United States*, 69 F.4th 887, 895–96 (Fed. Cir. 2023) (noting that in the context of § 3304, the Federal Claims Court "correctly found" that two performance evaluations, reflective of a subset of duties, "failed to sufficiently address whether Mr. Kelly was able to perform the common duties" of a rating of a "Second-Class Navy Diver").

The BCNR also failed to consider whether Mr. Bee's disabilities would affect his deployability. The government does not argue otherwise. *See* Appellee Br. 29–30. However, the government argues that the BCNR was not required to consider Mr. Bee's deployability under § 3304

because the "[i]nability to perform the duties of his or her office, grade, rank, or rating in every geographic location and under every conceivable circumstance will not be the sole basis for a finding of Unfit[ness]." *Id.* (quoting J.A. 14 (quoting § 3307)). In other words, the government argues that the BCNR's failure to consider deployability was harmless error because this factor alone could never serve as the basis for unfitness. *See id.* We disagree. That deployability alone could never be the basis for a finding of unfitness does not mean that deployability could never meaningfully influence an assessment of fitness. The government's position effectively neuters deployability from the § 3304 inquiry. This is error.

In sum, the BCNR's failure to consider the required factors of common military tasks and deployability under § 3304 was legal error. On remand, the BCNR must consider these factors when considering whether Mr. Bee could "reasonably perform his . . . duties" as an Infantry Unit Leader under § 3304.

### III. LIBERAL CONSIDERATION

Mr. Bee also argues on appeal that the BCNR erred in its 2023 Decision by failing to give "liberal consideration" to his petition, which requested a change in the narrative reason for discharge reflected in his DD Form 214 from voluntary discharge to a medical disability retirement based on his service-connected PTSD and TBI. Appellant Br. 31. Underlying this argument are two sub-issues. The first is whether, under either 10 U.S.C. § 1552(h) or binding Department of Defense ("DoD") policy, the BCNR must afford "liberal consideration" to not only a request for a change in the servicemember's narrative reason in his DD Form 214 but also to the BCNR's fitness determination. The second is, assuming liberal consideration extends to a fitness determination, whether the BCNR failed to apply such consideration here. Before addressing these two issues, we provide an overview of liberal consideration.

### A.

Generally, "liberal consideration" refers to a requirement that military correction boards liberally consider petitions for correction of military records that claim that the servicemember's service-connected mental health condition, such as PTSD, TBI, or sexual abuse trauma, affected the circumstances of his discharge. The specifics of this rule are found in binding DoD policy and 10 U.S.C. § 1552(h), which we discuss below.

Beginning with DoD policy, in 2014, the DoD issued binding policy via a memorandum by Secretary of Defense Hagel ("Hagel Memo"). *See* ADD1–4.[3] The Hagel Memo explains that petitions filed before military correction boards seeking a "discharge upgrade" based on the veteran's "previously unrecognized" PTSD should be afforded "liberal consideration." *See* ADD1–2. In other words, when a veteran is seeking a correction to his discharge reflected in his military record, such as in his DD Form 214, from an unfavorable discharge to a more favorable one in light of the veteran's PTSD, a military correction board should afford "liberal consideration" to certain aspects of the proceeding. *See id.* For example, the Hagel Memo provides that:

> [i]n cases where Service records or any document from the period of service substantiate the existence of one or more symptoms of what is now recognized as PTSD or a PTSD-related condition during the time of service, *liberal consideration* will be given to finding that PTSD existed at the time of service.

*Id.* (emphasis added).

---

[3]    "ADD" refers to the addendum at the end of Mr. Bee's opening brief in this appeal.

In August 2017, the DoD issued additional binding policy in a memorandum by acting Under Secretary of Defense Kurta ("Kurta Memo"). The Kurta Memo expands on the Hagel Memo, requiring military correction boards to afford "liberal consideration" under broader circumstances. *See* ADD5–6. For example, the Kurta Memo notes that liberal consideration should not only be afforded to claims related to PTSD but to other "[i]nvisible wounds," including "mental health conditions; traumatic brain injury; sexual assault; or sexual harassment." ADD5–6. Additionally, the Kurta Memo clarified that "liberal consideration" applies not only to a "discharge upgrade" but more broadly to petitions seeking "discharge relief." ADD6. The Kurta Memo also recognized that "the term discharge includes the characterization, narrative reason, separation code, and re-enlistment code" reflected in a servicemember's military record, such as in the DD Form 214. ADD8.

Finally, the Kurta Memo provides guidance as to the meaning of "liberal consideration." While the Kurta Memo does not provide a singular definition, it explains that "[l]iberal consideration includes but is not limited to . . . [eleven] concepts." *Id.* These eleven concepts vary, ranging from concepts concerning evidentiary leniency to general propositions concerning the nature of PTSD and other mental health conditions. ADD8–9. For example, one concept provides that "[s]ome circumstances require greater leniency and excusal from normal evidentiary burdens." ADD8. Another provides that "[m]ental health conditions, including PTSD [and] TBI . . . inherently affect one's behaviors and choices causing veterans to think and behave differently than might otherwise be expected." ADD9.

Turning to statutory authority, in December 2017, Congress amended the BCNR's authorizing statute to require military correction boards to review claims involving service-connected PTSD, TBI, and other mental health conditions with "liberal consideration." 10 U.S.C. § 1552(h); *see also* National Defense Authorization Act for Fiscal Year

2018, Pub. L. No. 115-91 § 520, 131 Stat. 1283, 1379, 1380 (2017).  The statute provides that:

> (1) [t]his subsection applies to a former member of the armed forces whose claim under this section for review of a discharge or dismissal is based in whole or in part on matters relating to post-traumatic stress disorder or traumatic brain injury as supporting rationale, or as justification for priority consideration, and whose post-traumatic stress disorder or traumatic brain injury is related to combat or military sexual trauma, as determined by the Secretary concerned.

> (2) In the case of a claimant described in paragraph (1), a board established under subsection (a)(1) shall--

> . . .

> (B) review the claim with *liberal consideration* to the claimant that post-traumatic stress disorder or traumatic brain injury potentially contributed to the circumstances resulting in the discharge or dismissal or to the original characterization of the claimant's discharge or dismissal.

10 U.S.C. § 1552(h)(1)–(2)(B) (emphasis added).

In 2023, in *Doyon v. United States*, this court clarified that under both the Kurta Memo and 10 U.S.C. § 1552(h), the BCNR must afford "liberal consideration" to a petition for correction of a servicemember's military record to reflect a change in the narrative reason of discharge in his DD Form 214 from a personality disorder to  discharge due

to physical disability, i.e., PTSD.[4]  58 F.4th 1235, 1243–48 (Fed. Cir. 2023).  In *Doyon*, the government argued that under either the Kurta Memo or 10 U.S.C. § 1552(h), liberal consideration was only to be afforded to a specific type of discharge relief, i.e., misconduct-based upgrades or modifications to a servicemember's characterization of service. *Id.* at 1243.  We disagreed, noting that under both legal sources, liberal consideration applies more broadly to "any petition seeking discharge relief," including changes to the narrative reason reflected in the DD Form 214 and changes to re-enlistment codes.  *Id.* at 1243–48.

### B.

We now turn to the arguments on appeal concerning liberal consideration.  The first is whether liberal consideration extends only to Mr. Bee's request to change the narrative reason for discharge in his DD Form 214 to reflect a medical disability retirement or whether it also extends to the related fitness determination the BCNR makes when determining if the servicemember is entitled to medical disability retirement pay.  According to Mr. Bee, under either the Hagel and Kurta Memos *or* 10 U.S.C. § 1552(h), liberal consideration extends to both inquiries.  *See* Appellant Br. 32–42.  The government argues that liberal consideration can only extend to the former.  *See* Appellee Br. 40–47; *see also* Oral Arg. at 1:27:55–1:28:16.  For the below reasons, we determine that the plain language of 10 U.S.C. § 1552(h) requires the BCNR to afford liberal consideration to both inquiries.  As such, we need not reach whether the Kurta and Hagel Memos also separately require liberal consideration to extend this far.

"When interpreting a statute, we begin our analysis with the language of the statute itself."  *Res-Care, Inc. v.*

---

[4]    The Hagel Memo was not at issue in *Doyon*.  58 F.4th at 1243.

*United States*, 735 F.3d 1384, 1388 (Fed. Cir. 2013). "If the statutory language is plain and unambiguous, then it controls." *Id.* (citation modified); *Xianli Zhang v. United States*, 640 F.3d 1358, 1364 (Fed. Cir. 2011).

The statute at issue provides that a military corrections board may review a "claim . . . for review of a discharge or dismissal . . . based in whole or in part on matters relating to post-traumatic stress disorder or traumatic brain injury . . . [which] is related to combat or military sexual trauma, . . ." 10 U.S.C. § 1552(h)(1). No party disputes that Mr. Bee's petition is a "claim" under § 1552(h)(1). Appellant Br. 32; Oral Arg. 1:24:12–1:24:47. The statute also provides that military corrections boards "shall . . . review the claim [as defined §1552(h)(1)] with liberal consideration to the claimant that the post-traumatic stress disorder or traumatic brain injury potentially contributed [1] to the circumstances resulting in the discharge or dismissal or [2] to the original characterization of the claimant's discharge or dismissal." 10 U.S.C. § 1552(h)(2)(B). Thus, under § 1552(h)(2)(B), liberal consideration is afforded to two propositions, that the PTSD or TBI "potentially contributed to the circumstances resulting in the discharge or dismissal," and that the PTSD or TBI "potentially contributed . . . to the original characterization of the claimant's discharge or dismissal." *Id.*

We need not determine whether the second, narrower proposition encompasses a fitness determination because we hold that the first, broader proposition, i.e., that PTSD or TBI "potentially contributed to the circumstances resulting in the discharge," encompasses fitness determinations. As previously discussed, a "fitness determination" is an inquiry undertaken by the relevant medical review board pre-discharge, or by the BCNR post-discharge, to determine whether the servicemember should be retired with pay from the military due to physical disability. *See* 10 U.S.C. § 1201(a). The inquiry asks whether, due to a service-connected disability, the servicemember is "unfit to

perform the duties of the member's office, grade, rank, or rating." *Id.* Here, Mr. Bee is seeking a change in the narrative reason for his discharge in his DD Form 214 to reflect a medical disability retirement. Mr. Bee's fitness, i.e., whether he was unfit to perform the duties of an Infantry Unit Leader under 10 U.S.C. § 1201(a), is a factual determination necessary to reflect a medical disability retirement on Mr. Bee's DD Form 214. *See* 10 U.S.C. § 1201(a) (providing that only "upon a determination" that the servicemember is unfit "may [the military] retire the member"). As such, the BCNR's fitness determination plainly falls within 10 U.S.C. § 1552(h)(2)(B)'s requirement that liberal consideration be afforded to the proposition that a servicemember's PTSD or TBI "potentially contributed to the circumstances resulting in the discharge." Whether Mr. Bee was unfit for duty necessarily falls within and directly impacts Mr. Bee's overall claim that his service-connected PTSD and TBI potentially contributed to "the circumstances resulting in [his] discharge," which was erroneously noted as a voluntary discharge, and which should be changed to a medical disability retirement.

The government's argument to the contrary fails. The government argues that despite the plain language of 10 U.S.C. § 1552(h)(2)(B), Congress did not intend to "topple . . . well-established" military authority that liberal consideration does not extend to fitness determinations, as evidenced by the Hagel and Kurta Memos. Appellee Br. 40–48.[5] We reject the government's position on two grounds. First, as previously noted, "[i]f the statute is clear

---

[5] *See also* Oral Arg. at 1:27:10–1:27:25 (government's counsel agreeing that its "view is whatever these words are in the statute [10 U.S.C. § 1552(h)(2)(B)] just go look at Hagel and Kurta and just restrict yourself to what [these memos] speak to and neither . . . speak to medical retirement").

and unambiguous, then the plain meaning of the statute is conclusive, and we give effect to the unambiguously expressed intent of Congress." *Xianli Zhang*, 640 F.3d at 1364. For the reasons already discussed, 10 U.S.C. § 1552(h) broadly applies liberal consideration to fitness determinations when the petition at issue is seeking a change in the narrative reason for discharge in the DD Form 214 to reflect a medical disability retirement. The government's position effectively asks this court to rewrite 10 U.S.C. § 1552(h) to except fitness determinations from liberal consideration, which we cannot do. We only interpret the law; we do not write it. *See Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.").

Second, the Hagel and Kurta Memos do not indicate a "well-established" military rule that liberal consideration cannot extend to fitness determinations. Neither memo explicitly prohibits liberal consideration from extending to fitness determinations, *see* ADD1–9, and the Kurta Memo could reasonably be read as allowing liberal consideration to extend to fitness determinations. *See* ADD5–9. The Kurta Memo notes that liberal consideration applies to petitions seeking "discharge *relief,*" without any distinction as to the type of relief sought. ADD6 (emphasis added). The Kurta Memo also notes that a "discharge" encompasses such actions like a change in the narrative reason for discharge. ADD8. Thus, while the Kurta Memo does not explicitly discuss fitness determinations, it plainly envisions liberal consideration as having broad reach, including petitions seeking discharge relief related to service-connected PTSD, TBI, and/or sexual abuse trauma. *See* ADD5–9. Thus, given that neither the Hagel nor Kurta Memos explicitly prohibit liberal consideration from extending to fitness determinations and given the broad understanding of liberal consideration set out in the Kurta Memo, we reject the government's position that these two memos evidence a "well-established" military rule that

liberal consideration does not extend to fitness determinations.

In sum, we hold that under 10 U.S.C. § 1552(h), liberal consideration applies to the BCNR's fitness determination when a servicemember seeks to change the narrative reason for their discharge to a medical disability retirement.

## C.

Mr. Bee next argues the BCNR did not apply liberal consideration to his petition in form or in substance. Appellant Br. 37–39. Specifically, Mr. Bee argues that the BCNR did not expressly state that it was applying liberal consideration nor did it apply any of the specific principles of liberal consideration mandated under the Kurta Memo. *Id.* The government argues that the BCNR gave liberal consideration here since it gave "full consideration, accepting Mr. Bee's PTSD and TBI diagnoses, and analyzing all of the evidence of his fitness with that in mind." Appellee Br. 48. We hold that the BCNR failed to give Mr. Bee's petition liberal consideration.

"Liberal consideration" is not defined by statute. *See* 10 U.S.C. § 1552(h).[6] In the absence of a statutory definition of the term "liberal consideration," we may consider its use in other relevant contexts. *See F.A.A. v. Cooper*, 566 U.S. 284, 291–92 (2012) ("[W]hen Congress employs a term of art, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken." (citation modified)). Here, "[s]ection 1552(h) codified the liberal consideration standard prescribed by the Kurta Memo." *Doyon*, 58 F.4th at 1246. In the Kurta Memo, "liberal consideration" refers to a cluster of "concepts," with no singular definition.

---

[6]    The parties do not argue in favor of any dictionary definitions of this phrase or that this phrase has a plain meaning. *See* Appellant Br. 39–41; Appellee Br. 48–51.

ADD8–9. Specifically, the Kurta Memo provides that "[l]iberal consideration includes but is not limited to . . . [eleven] concepts," including concepts related to evidentiary considerations and others related to general propositions about mental health conditions. *Id.* And while the Kurta Memo does not provide a singular definition of "liberal consideration," there is a fundamental characteristic to be gleaned from it: liberal consideration may be understood as a "more lenient . . . evidentiary standard." *Doyon*, 58 F.4th at 1238. That is, a veteran's testimony and evidence may be given more credit and weight under certain circumstances to establish that the veteran was unfit for duty due to PTSD or TBI. *See* ADD8 ("It is unreasonable to expect the same level of proof for injustices committed years ago when TBI; mental health conditions, such as PTSD; and victimology were far less understood than they are today.").

Thus, we conclude that under 10 U.S.C. § 1552(h), liberal consideration at a minimum (a) is a lenient evidentiary standard the BCNR should apply when considering whether the servicemember showed he was unfit for duty, and (b) should reflect the applicable concepts listed in the Kurta Memo.[7] Additionally, the BCNR should clearly indicate in its decision when it is applying liberal consideration.

We now turn to whether the BCNR failed to apply liberal consideration to Mr. Bee's petition. We determine that it did. Here, there is no statement, explicit or implied, indicating that the BCNR applied a lenient evidentiary standard in its 2023 Decision. To the contrary, as the Federal Claims Court noted, the BCNR "fully grappled with the evidence for and against [Mr. Bee's] claim." J.A. 13.

---

[7] If clarity is needed as to the definition of "liberal consideration" within 10 U.S.C. § 1552(h), it is for Congress to address.

However, to fully grapple with the evidence, i.e., consider and weigh the evidence in the record, is not liberal consideration but rather the BCNR's basic duty owed to a servicemember's petition. *See* SECNAVINST 1850.4E § 3306(a) ("All relevant evidence must be weighted in relation to all known facts and circumstances . . . ."). Thus, on remand, the BCNR must do more than just consider and weigh Mr. Bee's evidence of unfitness. At a minimum, it must afford a more lenient evidentiary standard when considering whether Mr. Bee's evidence establishes that he was unfit to perform the duties of an Infantry Unit Leader. It must also consider and apply those concepts applicable to Mr. Bee's petition from the Kurta Memo, and it must make clear that it is applying liberal consideration to Mr. Bee's petition.

## CONCLUSION

We have considered the government's other arguments and find them unpersuasive. For the foregoing reasons, we vacate the Federal Claims Court's decision. The BCNR erred when it failed to apply the correct legal standards for assessing Mr. Bee's fitness under SECNAVINST 1850.4E, §§ 3301, 3304. The BCNR also erred when it failed to apply liberal consideration to Mr. Bee's petition, which extends to his request for a change in his narrative reason for separation in his DD Form 214 from voluntary separation to medical disability retirement and to the underlying fitness determination.

The case is remanded to the Federal Claims Court with direction for a remand to the BCNR for further proceedings consistent with this opinion.

### VACATED AND REMANDED

#### COSTS

Costs to appellant.